IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRANDON OWENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-cv-1336-DWD |
| | ) |
| BRANDY TRIPP,[1] | ) |
| TARA CHADDERTON, | ) |
| CHAD FRIERDICH, | ) |
| JOHN TROST, and | ) |
| ANGELA WALTER, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

On December 24, 2016, Plaintiff Brandon Owens was sent from Menard Correctional Center to Chester Memorial Hospital where he was diagnosed with a ruptured appendix and had an emergency appendectomy. Owens first reported having abdominal pain to medical staff at Menard on December 22, 2016, and he alleges that Defendants Brandy Tripp, Tara Chadderton, Chad Frierdich, John Trost, and Angela Walter were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. On March 18, 2020, Defendants Tripp and Trost moved for summary judgment, and Defendants Chadderton, Frierdich, and Walter filed a motion for summary judgment on June 19, 2020. This action was reassigned to the undersigned on May 18, 2021. For the reasons delineated below,

---

[1] The Clerk of Court is **DIRECTED** to correct the spelling of the names of Defendants Tripp and Walter on the docket sheet.

Defendants' motions are granted in part and denied in part.

## FACTUAL ALLEGATIONS

At all times relevant to his complaint, Plaintiff Brandon Owens was incarcerated at Menard Correctional Center. Defendant John Trost was employed by Wexford Health Sources, Inc. as the medical director at Menard, and Wexford employed Defendant Brandy Tripp as a registered nurse at Menard. Defendants Tara Chadderton, Chad Frierdich, and Angela Walter worked for the Illinois Department of Corrections as registered nurses at Menard. Each defendant played a role in the events that led to Owens being rushed to the hospital and receiving emergency surgery for a ruptured appendix in December 2016.

On December 22, 2016, Owens began experiencing severe abdominal pain. He flagged down a correctional officer because he felt like his pain was a medical emergency. The officer told Owens that he would contact a nurse and returned to tell Owens that the nurse wanted to see him. Owens was taken to see Defendant Tripp. His medical records reflect that Tripp evaluated Owens for constipation. Tripp and Owens disagree as to who first mentioned constipation. Tripp testified at her deposition that Owens reported being constipated, but Owens testified that Tripp suggested it to him as a possible cause of his discomfort. (Doc. 95-2, p. 16; Doc. 95-1, p. 10). He maintains that he only reported having stomach pain and that he felt a stabbing pain. (Doc. 95-1, p. 10, 11).

Medical records reflect that Tripp noted that Owens's last bowel movement was two days earlier and that he had abdominal pain and a temperature of 99.8 degrees. The form for constipation protocol assessments directs that separate, appropriate protocols

and assessments should be performed if a patient reports nausea, vomiting, or abdominal pain. With Owens reporting that he was experiencing nausea, vomiting, and abdominal pain, Tripp opted to provide Owens with milk of magnesia and a stool softener. She did not perform any additional assessment protocols for his complaints, though she did note that he reported abdominal pain. (Doc. 95-4, p. 2).

Owens next was seen by Defendant Chadderton between 11:00 p.m. on December 22 on 7:00 a.m. on December 23, 2016. According to Owens' deposition testimony, he told Chadderton that he had a stabbing pain and explained that he was sweating. She assessed him using the constipation protocol and noted in his medical records that he complained of lower left quadrant pain. She did not perform an additional abdominal pain protocol. Chadderton noted that Owens had tenderness, though his bowel sounds were normal. Chadderton continued Owens on the milk of magnesia and scheduled him for the medical doctor call line. (Doc. 95-4, p. 1). A non-party nurse noted around 12:00 p.m. on December 23 that Owens was not seen through the doctor call line due to an institutional lockdown. (Doc. 95-4, p. 3).

Defendant Frierdich examined Owens at 10:00 a.m. on December 24, 2016. He followed the abdominal pain protocol and noted that Owens had reported two days of stabbing abdominal pain and a liquid bowel movement that was brown with some red the night before. Frierdich also noted abdominal guarding and rebound tenderness. Owens had a temperature of 100 degrees and an elevated pules. Frierdich reported to Dr. Trost because Owens had a pulse over 100, and Dr. Trost ordered that Owens be placed

on 23-hour observation in the healthcare unit. Dr. Trost also ordered a saline IV, clear liquid diet, Tylenol for pain, and regular vital sign checks. (Doc. 95-4, p. 4-5).

Defendant Walter was the next healthcare unit worker to examine Owens, and she did so shortly before noon on December 24, 2016. She noted that Owens had a fever of 101.4 degrees and that his IV was infusing with difficulty. Owens described his pain as a 7 or 8 out of 10. He also self-reported painful urination, so Walter gave him a cup for urine sample. Walter next saw Owens at 12:30 p.m., and he told her, "It hurts so bad!" He described the pain as radiating to his scrotum. Walter notified Dr. Trost, and Dr. Trost gave orders via telephone for Owens to be transferred to Chester Memorial Hospital. In the emergency room, Owens was diagnosed with a ruptured appendix and sent for an emergency appendectomy.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.,* 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving

party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

The Eighth Amendment prohibits cruel and unusual punishments, and the deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner's dissatisfaction with a medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so "blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)(citation omitted).

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)(citation omitted). The first consideration is whether the prisoner has an "objectively serious medical condition." *Arnett*, 658 F.3d at 750. *Accord Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or

the need for treatment would be obvious to a layperson." *Hammond v. Rector*, 123 F. Supp. 3d 1076, 1084 (S.D. Ill. 2015)(citing *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir.2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer*, 511 U.S. at 828 (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm")(internal quotation marks omitted) (emphasis added).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Greeno*, 414 F.3d at 653. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). *See also Hammond*, 123 F. Supp. 3d at 1086 (stating that "isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)(citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot

be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (citing *Zaya v. Sood*, 836 F.3d 800, 805-806 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did," *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016))(alterations in original). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *See Berry*, 604 F.3d at 441.

## ANALYSIS

### I. Deliberate Indifference to Serious Medical Needs

The record clearly establishes that Owens had a serious medical condition. He reported several days of abdominal pain before ultimately being diagnosed with a ruptured appendix. Defendants do not raise a developed challenge regarding the seriousness of Owens's medical needs, and the Court finds that a reasonable juror would conclude that there is sufficient evidence to establish that Owens had an objectively serious medical need. Defendants instead argue that their medical treatment was not constitutionally deficient.

Defendant Tripp argues that her treatment of Owens did not rise to the level of deliberate indifference. There is a dispute of facts as to whether Owens reported that he was constipated or whether Tripp suggested that he was, and there is sufficient evidence that could allow a reasonable juror crediting Owens's testimony to find that Tripp displayed deliberate indifference. She noted that he had abdominal pain, but the medical records indicated that she did not follow the separate protocol for abdominal pain as recommended on the constipation protocol form. Owens described going to the healthcare unit due to severe, stabbing abdominal pain. A reasonable juror could conclude that Tripp recklessly or intentionally disregarded his reports pain and settled on constipation without fully weighing Owens's symptoms. In doing so, such a juror could conclude that Tripp failed to address Owens medical needs in the constitutionally required manner, and, as a result, she is not entitled to summary judgment.

Defendant Chadderton followed a similar course of treatment when she examined Owens. Owens testified that he described having a stabbing pain and that he was bent over and sweating due to his pain. Like Tripp, Chadderton only completed the protocol for constipation and continued Owens on treatment for that condition. According to the medical records, Chadderton did not perform the abdominal pain protocol, and she did not raise any issues to a physician, instead scheduling Owens for a medical call in the future. A reasonable juror who credits Owens's description of his pain and symptoms at the time he was examined by Chadderton could conclude that she displayed deliberate indifference to his medical needs.

Further, to the extent that Defendants suggest that their approach was reasonable under the circumstances, their actions contributed in a delay in Owens's treatment for appendicitis, and such a delay can rise to the level of deliberate indifference if the delay "exacerbated the inmate's injury or unnecessarily prolonged his pain." *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015)(citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) and *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007)). "Whether the length of delay is tolerable depends upon the seriousness of the condition and the ease of providing treatment." *Id.* (citing *McGowan*, 612 F.3d at 640). Where a plaintiff complains that treatment was delayed, as opposed to denied, the Seventh Circuit "require[s] that the plaintiff present 'verifying medical evidence' that the delay, and not the underlying condition, caused some harm." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019)(quoting *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013)(citing reference omitted)). Here, Owens's appendix was rupturing as he was being examined at the hospital, which is sufficient medical evidence to create an issue of fact as to whether the delays he faced between December 22 and December 24, 2016, exacerbated his injury and unnecessarily prolonged his pain.

As to the remaining defendants, Defendant Frierdich examined Owens for the first time at 10:00 a.m. on December 24, 2016. He performed the abdominal pain protocol and immediately reached out to Dr. Trost regarding Owens's pain, high pulse rate, and continued symptoms. Dr. Trost provided instructions to address Owens's complaints, including fluids and pain medication. When Defendant Walter examined Owens two hours later around noon, she recognized he was having continued issues, performed an

examination and testing, and returned to check on him at 12:30 p.m. When Owens reported serious pain at that time, she called Dr. Trost who ordered that Owens be taken to the emergency room.

No reasonable juror could conclude that Defendant Frierdich was deliberately indifferent to Owens's medical needs. He performed a thorough assessment, including the protocol for abdominal pain, and recognized that he needed to contact a physician for treatment orders. Those orders were then implemented, and Frierdich had no additional contact with Owens. Similarly, Defendant Walter checked on Owens approximately two hours later, recognized that Owens was in pain and having trouble, and contacted Dr. Trost.

As to Dr. Trost, he was informed of Owens's condition at 10:00 a.m. and recommended a course of treatment that addressed complaints of pain and included regular monitoring. When he was informed 2.5 hours later that Owens was not improving and was still in distress, he promptly ordered that Owens be transferred to the emergency room. These actions by these defendants demonstrate that they took Owens's medical needs seriously, worked to address them appropriately and without delay, and did not knowingly or recklessly disregard his need for treatment. No reasonable juror could conclude otherwise, and Defendants Frierdich, Walter, and Trost are entitled to summary judgment.

## II.     Qualified Immunity

Defendants Chadderton, Frierdich, and Walter also argue that they are entitled to qualified immunity. Qualified immunity shields "government officials from liability for

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. It protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The qualified immunity test has two prongs: (1) whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *See Pearson*, 555 U.S. at 232. *See also Brosseau*, 543 U.S. at 197; *Wilson v. Layne*, 526 U.S. 603, 609 (1999). To be "'clearly established' a right must be defined so clearly that every reasonable official would have understood that what he was doing violated that right." *Dibble v. Quinn*, 793 F.3d 803, 808 (7th Cir. 2015)(citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). There need not be a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The right must be established "not as a broad general proposition." *Reichle*, 566 U.S. at 664. Instead, it must be "particularized" such that the "contours" of it are clear to a reasonable official. *Id*. That is, "existing precedent must have placed the statutory or constitutional question beyond debate." *Carroll v. Carmen*, 135 S.Ct. 348, 350 (2014).

Here, no reasonable juror could conclude that Defendants Frierdich and Walter were deliberately indifferent to Owens's serious medical needs. In the absence of a constitutional violation, they are entitled to summary judgment. When the facts are taken in the light most favorable to Owens, they demonstrate that Defendant Chadderton's conduct may have violated his constitutional rights. As such, she is not entitled to qualified immunity.

## CONCLUSION

For the above-stated reasons, Defendants' motions for summary judgment (Docs. 94, 105) are **GRANTED in part** and **DENIED in part**. The motions are granted as to Plaintiff's claims against Defendants Frierdich, Walter, and Trost. Plaintiff's claims against Defendants Tara Chadderton (Count IV) and Brandy Tripp (Count V) remain pending. By separate order, the Court will set a status conference to discuss scheduling matters. The parties shall be prepared to discuss trial dates and whether a settlement conference would be fruitful.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Summary Judgment is such a hurdle, but it is a very low one for the Plaintiff to clear. Clearing the Summary Judgment hurdle does not mean that the Plaintiff has won his case nor does it mean that he is entitled to damages or other relief. As noted above, clearing the summary judgment hurdle only requires the existence of a disputed fact material to the Plaintiff's claim. At trial, he will need to prove that the disputed fact did, in fact, occur as the Plaintiff says it occurred. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.

The Clerk of Court shall correct the spellings of Defendants' Tripp's and Walter's names as directed in footnote 1. At the close of the case, the Clerk of Court shall enter judgment in favor of Defendants Chad Frierdich, Angela Walter, and John Trost and against Plaintiff Brandon Owens.

**SO ORDERED.**

Dated: June 9, 2021

_____
DAVID W. DUGAN
United States District Judge